The argument this morning is 151574, Immersion Corporation v. HTC Corporation. My understanding is Mr. Palmore, you're taking eight minutes, your government is taking ten, and you'll do a rebuttal. Is that right? Okay. Please proceed. Thank you. I'm Joseph Palmore here on behalf of Immersion Corporation. The PTO's rule permitting same-day filings of continuation applications is a reasonable exercise of administrative discretion to sequence two purely administrative occurrences. And it is supported by a century and a half of history, by profound reliance interests, and by multiple deference doctrines. I don't disagree with that, but when you say sequencing, the word that we're dealing with is before. So it's not random sequence. It's that one thing happens. I don't want to use the term before determining it, but I don't know the word. One thing happens first and something else happens after that, right? That's correct, Chief Judge Prost. And the key is the one thing and the other thing. So the case is not just about before in isolation. It's about a filing coming before the patenting. So it requires a determination of which of those two administrative occurrences comes first. And when the two happen on the same day, the statute is silent as to how to sequence them and how to understand which comes first. Why is it silent? If something has to happen before something else happens, then whether it's on the same within a 24-hour period or within a one-year period, it still doesn't change the fact that something happens before something else, right? Well, this was the district court's holding, if this is what you're referring to. The district court applied kind of a stopwatch approach to this question and said, we need a time of comparison. When exactly in the real world did the filing happen and when exactly in the... Why is that wrong, given the clear language? Because there's no means of determining those two times. And I would point out that HTC does not defend the district court's rationale. Is that... I guess one way of understanding your point about there is no way of determining would be there could be something to determine, but they're not set up to determine it. I took it that your point was maybe more fundamental, that this thing called filing and this thing called patenting are not objectively identifiable physical acts. They are legal constructs that somebody has to define. So it's not just they can't find it because they haven't developed the microscope or the clock to do it. It's that these are not things that exist apart from their deeming and definitional activities. That's exactly right, Judge Toronto. That is our position. There is no way in the real world you can sit with a stopwatch and observe as an empirical matter when these things happen. Okay. If that's the case, however, given that the language still compels one thing happening before another, then why isn't the necessary outcome for the patent office to then say, okay, if we are unable for whatever reason to determine the exact time, then we'll have to say you file it on the day before, even though that sequencing is not necessarily compelled by the statute. But if it can't work out in one day, why isn't the necessary fallback to say, okay, it requires before, so we'll pick the day before and not allow the same day because we can't calculate what happens within that one day period? Because that's not the way Congress wrote the statute. The way that HTC argues the case is as if Section 120 said the filing had to happen on the date before the patenting. In fact, we have a long string side in our reply brief of provisions of the Patent Act which are replete with this date of formulation that define timing requirements vis-a-vis a date. In Section 120, Congress did not use that formulation. It required a comparison between two, as Judge Toronto said, purely administrative events, a filing and the patenting, which is a term not used anywhere else in the statute. And it was silent on how to sequence them when they occur on the same day. And what HTC is suggesting is that the Congress in Section 120, sub salientio, overturned a century of settled Patent Act practice without any comment or without anyone noticing. Can I just, if you step back and say, okay, well what is the purpose of the statute? To your language is clear. It says before. There might be other reasons to dislodge that. But isn't it clear that Congress thought that if you've got a prior application and you want to file a continuation and use that priority date, it makes perfect sense that that still has to be pending when the continuation is filed, right? Is there any dispute about that, that this reading it the way Judge Andrews read it at least makes absolute sense and is consistent with what clearly this whole provision is about? Well, I would respectfully disagree because I think given the history, Judge Andrews position and HTC's position is unsupported because all Patent Act, all continuing application practice, both before the 52 Act and after the 52 Act, sprang from the Supreme Court's decision in Godfrey v. Ames. And in Godfrey, the withdrawal and the patent issuance happened on the same day. Yeah, but withdrawal is a lot different. It's a lot more complex, right? Because you file a motion to withdraw and that was what we were talking about in Godfrey, but nothing happens when you file a motion. The Patent Office has to grant the motion, right? So that's a little bit different than when we're talking about what we understand to be patenting here, which is the Patent Office issues the patent. Well, Chief Judge Prost, I respectfully disagree with that reading of Godfrey. That's what of a motion to withdraw that was acted on at some later time. It was withdrawn and that is how the court... By the... By the applicant. By the applicant. Yes. Is that, as you understand, practiced before the Patent Office, does that have any final legal consequence when you move to withdraw? Does it withdraw really come? Doesn't the final act require the board to act and approve that motion or whatever it is? Well, that may be the case. I don't know for sure. I don't know for sure if it's now, but when you file a petition to withdraw or a petition to abandon, you can actually request that it be deemed to have occurred on the date of the filing of a continuation application. Again, consistent with this long-settled practice springing from Godfrey that is undisturbed for nearly a century before Congress adopts the 52 Act. Then in Section 120, Congress codified, in the words of this court in Transco, intended to codify pre-existing continuation application practice unless it specifically made a change and called it out, which it did in one respect. It required that a continuation application refer to the prior application in order to be valid. While the term before in this statute is pretty clear, unambiguous, I am having some trouble with what is meant by the terms patenting and filing. I think there is some ambiguity here. You referred to those terms and the Patent Office's decision on those terms as one of being just administrative, but how those terms are defined and how the Patent Office reacts to those terms has an actual effect potentially on priority. It's not really simply an administrative determination. It's a determination that can have some effect on parties' rights. Absolutely, Judge Lynn. Just like any kind of deadline can have effects on parties' rights, but that doesn't mean it's not procedural. Here, the PTO has implemented a mailbox rule, which Congress authorized it to do, and to deem a filing to have occurred on the date that something was dropped in an express mailbox. This is all about deeming. This is all about, to a certain extent, a fiction of things that we are not observing in the real world with a stopwatch, but we are deeming to have occurred at a certain time on a certain day. I think the government citation to Federal Rule of Appellate Procedure 4A2 is quite apt. That rule provides that if a notice of appeal is filed after a judgment is announced but before it is entered, it is deemed to have been filed on the date of entry and after entry. That is exactly parallel to what the Patent Office has done here, consistent with 150 years of practice, which is that when the two events happen on the same day, it deems one to have occurred after the other, or the filing to have occurred before the patenting. Do you have an argument? I don't remember you making one, that if the PTO had resolved the issue differently, that would be impermissible under the statute? We haven't expressly made that argument. I think they would have a problem potentially under cases like Transco and this Court's predecessor issue, the decision of N. Ray Henriksen, in which the Court has found that when the PTO seeks to implement Section 120 by departing from settled historical practice, this Court and N. Ray Henriksen found that that was prohibited. Again, because Congress, on the finding that Congress intended to adopt and codify pre-1952 continuation application practice in Section 120, and that the PTO can't depart from it, and at the same day, filings were consistently permitted. Of course, I don't have to convince you of that. All I have to convince you of is that the PTO's choice to adopt and continue long-standing practice is reasonable. Explain to me, there wasn't an issue in Godfrey about some sort of beforeness to the temporal priority. It was just language about it would treat it as the same application. It happened on the same day that there was no break. Remind me, what was the legal consequence of whether or not there was a break in Godfrey? Well, the consequence of whether or not it was a valid continuation was what was at issue in Godfrey. For purposes of the on-sale bar, the patent applicant needed the benefit of the earlier filing. It was a timing question. It was a timing question with respect to whether the second application was a continuation of the first and could have the benefit of the first filing date. Okay. You've exhausted your rebuttal. We'll restore the two minutes of rebuttal. Thank you, Chief Judge Prost. May it please the Court, Benjamin Schultz on behalf of the United States. The Patent Office, for over 50 years, has reasonably understood Section 120 as meaning that when a continuing application is filed on the same day that its parent issues as a patent, the continuing application is understood as having been filed before the patent date. Can I ask you a process question just about how this all works, which is that in this case, as I understand it, the Patent Office issued some notice of allowance that had a projected date on which the original patent application would issue. I'm just wondering how an applicant knows, whether it's the day before, the same day, whatever, how a patentee can really know what date he's working with in terms of when the original is going to issue, right? Sure. So what happens is after the notice of allowance is issued, then the applicant has to pay the fee, and then after the fee is paid, then typically what happens, and it's roughly two weeks before the expected issuance, the Patent Office sends someone a notice saying, basically, we think this is the date that your patent is going to issue. Occasionally, it turns out that for one reason or another, that date isn't kept, but applicants generally... What happens in a circumstance if that date comes earlier, if they actually act earlier so that a party is precluded from filing a continuation because they thought the patent was going to... You say the expected date is April 1st, and it turns out... Does it happen? I mean, it's conceivable, right, that the Patent Office would issue it before rather than after? I don't know that the rules preclude the Patent Office from doing that. I'm also not aware that that has ever happened. What I am aware of happening is sometimes, for one reason or another, at the last minute, some error is found, and then issuance is delayed. So I suppose... In which case, we would presumably be avoiding most of this stuff. That's right. Although, my understanding is, typically, when PTO issues that notice of issuance, it's extremely likely that the issuance date that PTO predicts is, in fact, the date that is... And that was this case. And my understanding is that was this case, and that's... Sorry to take you on the spot. I just wanted to understand. No worries. But actually, I think, Your Honor, that whole sequencing shows exactly why it's so important in interpreting this statute and understanding whether or not PTO gets deference here to recognize that there are patent applicants who are relying on PTO's interpretation, which is a long-standing interpretation in which we contend is entitled to deference. Yeah. But what effect does that have, exclusively the reliance? I mean, they're entitled to deference maybe for a whole slew of reasons. But how does reliance really play a key role if we can establish that there are some number of Mr. Bagatelle might disagree? We're not talking about 30,000, but we're talking about some number of people who read the MPEP is clear. And they read it, and they relied on it. What happens if Judge Andrew's ruling is sustained? Well, so I think several different things happen. First of all, the Supreme Court's opinion in Zenith Radio is an opinion that explains that in interpreting what a statute means, a court should take account of the fact that individuals have relied on a long-standing interpretation. Furthermore, we think that if the court were to reach Skidmore deference, and although we contend that Chevron deference is applicable here, but if the court gets to Skidmore deference, one of the factors that we think would influence Skidmore deference as well is the fact that a number of individuals have relied on this. And we also cite the Ninth Circuit's opinion in the Alaska Stock Photography, which is that when lots of individuals are relying on an agency's long-standing construction, it's important for courts to account for that. So, you know, whether you want to do it as a matter of deference or whether you want to do it as a matter of interpreting the statute in the first place, either way, we think it has a role to play in this case. Can you remind me what your chain of reasoning is from the language of the statute to some squishiness that the agency can resolve? Absolutely. So the relevant phrase here is filed before the patenting. And so the key questions here are when is the continuing application filed and when is the patenting. And as far as the agency is concerned, when those two happen in the same day, the filing is an ambiguous concept and the patenting is an ambiguous concept. And PTO has reasonably understood that in those circumstances, when you file a continuing application on the same day as patent issuance, then, in fact, the filing happens before the patenting. And I think the example that we cite in our brief that is, in my mind, a very good example of this is that the Federal Rules of Appellate Procedure do something similar, which is also what Mr. Palmore mentioned, namely that even though you might think in a very physical sense a notice of appeal filed after a judgment is announced, but before it's actually entered, even though in a physical sense you might think that that notice of appeal is filed before the district court enters judgment, the Federal Rules of Appellate Procedure nonetheless say that in terms of a legal matter, we treat them as having been filed on the same date and after the district court enters judgment. And we think what the PTO has done here is something similar. It said that filing is inherently a concept that is about what does it mean when you file something in the agency? I suppose one might read the existence of a deeming provision as indicating that in the absence of such a deeming provision, reality, not fiction, governs. Well, I think in the absence of a deeming provision, you go with what other rules say. And other rules say, generally speaking, a document is filed with a court when it's received by the court. But even then, there are exceptions. And so, again, just to go back to the Federal Rules of Appellate Procedure, for example, the default rule, or rather the rule that applies to most filings, is that when the court receives the document, the document is filed. But certain kinds of documents, like briefs and appendices, are understood as filed when they're deposited with certain kinds of mailing services. And so the idea is that even the concept of a filing, even if you try and understand it as a physical thing, that still begs the question of what physical thing? So if there were no common law backdrop, and the Patent Office had just gotten the statute and they said, we can't cast aside the word before, so we're going to issue either a regulation or explain in the NPEP that before, because we can't determine same-day stuff because our recordkeeping isn't that clear, we're going to say that you have to file a continuation the day before. Do you think that would be entitled to deference and we should affirm that kind of rule? Well, I think if PTO were to adopt that rule, then we think that PTO would be entitled to deference. It would be a harder case for us because of the history. And whether or not – My hypothetical didn't include the history. I think it might be a harder case for us for various reasons, and it wouldn't be the long-standing interpretation of the agency. But regardless, here we do have that history. But what is the end of your answer to the question? But you think it would be – you would – being accorded deference and that rule should be upheld. Well, we think that the Patent Act in Section 2 says that PTO has the authority to issue procedural rules governing the conduct of proceedings in the office. And we think that sequencing, when filing happens relative to the patenting, is something procedural. And so whenever PTO exercised that authority, PTO would be accorded deference. Now, whether or not a court would conclude that even with that deference, the statute was violated, I suppose there's another issue. But it certainly would be a procedural rule and it certainly would be something that PTO's views would be accorded deference on. Can I ask you about the patenting side? We're obviously comparing two things, patenting and filing. On the patenting side, is – am I right in thinking that if, say, for infringement purposes, somebody sold a million units within the coverage of a product on the day at, you know, 12.02 a.m. of the day that the patent – that the patenting occurred, that that would all be infringing? Well, you know, that's something that – that is something that HTC assumes in its brief. I want to be clear that this court has never actually endorsed that understanding that the patent is enforced the entire day. But even – even assuming that HTC is correct in that assumption, I don't think PTO's rule is inconsistent with that. Because even if you think, for example, that one is able to sue for infringement at 12.01 a.m., then, first of all, that could be because just as a matter of remedial damages, you don't – you just deem the damages to be the entire day, whether or not issuance happened at that exact moment. Or even if you thought that issuance happened at 12.01 a.m., PTO's rule still says, just as a sequencing matter, that that could be fine, and we're deeming the filing to have occurred one moment before then. And so I don't think anything about PTO's interpretation would require this court in any way to undermine that assumed principle that you could sue for damages for the entire day. Could you just clarify for me briefly what is meant by patenting? And the trouble I'm having is I – that, to me, is not a discrete event of any sort. Filing, I can understand. I think that's exactly right. And we raise in our brief that there's some ambiguity. Is it the moment that it is signed and sealed? Is it the moment that it leaves the physical premises of PTO's offices? Is it when it's deposited with the Postal Service? I know the Patent Office will issue an issue notification with the date, and the Patent Office will send the certificate that has the ribbon and seal of the Patent Office. Correct. When is that certificate mailed? On the date of issue? Or is it mailed the day before so that the patentee receives it on the date of issue? My understanding is that it is not mailed until the date of issuance. It may even be, in some circumstances, if there are delays, it might even be after the issuance date. I can check on that. I'm not entirely certain. But it's certainly not mailed and signed and sealed before the issuance date. But the effective date of the patent issued is that time, right? My understanding is the issuance date is – typically, the date that it is signed and sealed is the date that has – that is listed as the issuance date. I suppose there may be one reason or another there's some problem with that. But my understanding is that's typically what happens. We're out of time. So thank you. And let's hear from the other side. And as I said, we're starting to be out of time. Thank you. May it please the Court. Dan Bagatelle for HTC. One thing we haven't talked about this means before it and not on or before it. Unfortunately, the MPEP has construed before the patenting to mean on the same date. But that – I guess for me, at least, one reason that that doesn't seem to need to get to the resolution of the issue is that it doesn't address the – what is the term I used before? Squishiness of the words that come after before. Patenting, filing – actually, both the words that comes before and after. And it's there that I guess I'd like you to talk about why there isn't enough room for judgment on the part of the PTO to define something that is not self-defining. I agree because in our view, both the patenting and the filing are judged with day-level granularity. And in that case, before becomes easy. You do an apples-to-apples comparison. So if I can convince you that the patent is issued on a day and that the filing occurs on a day, then before needs to be measured by day. But I need to convince you that both the patenting and the filing occur on the day-level rather than by the hour of the moment. And I think the answer to that is in the statute. Let's take the filing. The filing – the statute itself refers to a filing date. Section 120 refers to a filing date. We have particular statute that authorizes the PTO to accept filings and deem them as filed on the date of deposit with the United States Postal Service. It's always referred to as a date, never by an hour or a minute or a moment. But Section 120 refers to activities, patenting and filing, not a date. Actually, Section 120 itself does refer to a filing date. In fact, it shall have the same effect as to such invention as though filed on the date of the prior application. So that's the application date. It doesn't say that in the latter part of the sentence. But as I'll try to explain, patenting, abandonment… That's exactly right. I'm sorry. That's exactly right. The latter part of the sentence doesn't use that. The point is though that patenting, abandonment and termination of proceedings are all determined by date. That's the way the PTO has always done it and that's the way the statute refers to it. So again, if you take a look at Section 21, which is the statute that authorizes the regulation that the PTO has issued to say we will deem the application to have occurred on the date it is deposited with the United States Postal Service. It's date. And the same thing is true in Section 111, which is the default. It would be the date received by the PTO. It's always done by date. As to patenting, this is a binary issue here. We have an application and then it turns into a patent. There's no time when you're both an application and a patent. Patenting has to refer to issuance. It's when it's no longer just an application and it's become a patent. Section 154 tells you what that is. That's a date. There's a term of the patent. It runs from the date of issuance for 20 years as adjusted by hold days under Section 154B as necessary. But it's always determined by date. Courts have always looked at dates. The patents are done by dates. The PTO has never looked at it in anything other than hold dates. It's simply not done by the hour, the minute, or the moment. To the extent you're relying on practice, courts, PTO, etc., using period or comma, it seems to me there is a, and I don't think you dispute, an extremely longstanding and quite consistent practice with respect to this particular issue of temporal beforeness on filing and patenting. So why can't both of them survive largely because of the traditions? Because the tradition didn't have anything to do with before the patenting. Godfrey v. Eames deals with the scenario when you're replacing your original application with a new continuation application. You send them all into the PTO. But the tradition, at least since 1961, did have to do with that, right? Isn't the relevant language of 120 that exists since 1961? Yes, it came in 1952. So even putting aside everything that happened before 1961, we have many, many years, 55 years or something, of the patent community relying on the ability to do both on the same day. Okay, there are two aspects of that. There's the argument they've made about congressional ratification, and there's the aspect of the public reliance. If you like, I'll go right to the reliance because that appears to be the heart of your question. I'm interested in the other one too, but take them in any order you want. Whichever you like. Let's go with the reliance because I think that's what we've had the most questions about. Let's remember, this is the MPEP. It has no force of law. It is simply an agency manual. It doesn't get any Chevron deference. It's beyond the Chevron pale. It does say that they'll accept it on or before. However, if you keep going in the same paragraph, it also tells you, send in your continuation application when you send in the money to get your issuance of your patent. It tells you, do that, because you don't want to risk losing your continuation date. In any event, people are not entitled to rely on something that's classified. I'm sorry, but that would make perfect sense because of the perhaps theoretical possibility that they might actually issue the thing before they send it. By the way, you do get notice. You get notice of a couple of weeks. They knew exactly when it was and they chose to file on it. In your experience, do patents ever issue before the projected date? I've never seen it. It's like filing a brief early. You file a brief on a due date because it's on or before that date. It's not before that date. Let me just follow up on the point you make about the MPEP and it doesn't carry the weight of law, but we're dealing with clearly a procedural matter. Isn't it a fact that patentees, people who deal with the patent office, strictly procedural matters would look to the MPEP for guidance? They might, but they can't rely on the MPEP to have a force of law and to be binding on the PTO. Let's keep in mind here that the numbers that they've been talking about in their briefs, whether it's 10,000 or 13,000, those are the number of patents that potentially might be far less than 1% of all issued patents. Very few people are actually relying in this sense. Second of all, as to those particular patents, only a small number of them are really going to be affected. That's because only a small number of patents are actually maintained and enforced. It would have to be a case in which there's intervening art that's going to make a difference to the result. It wouldn't have been invalid, not infringed, or unenforceable otherwise. We're not talking about a flood here. We're talking about, at most, a trickle, a tiny number of patents in our view. They haven't been able to point to a single instance outside of this case. This is a very unusual case. Why don't you follow up with Judge Toronto's second part about congressional ratification? Sure, and congressional ratification. Again, we're talking- Or any other legally relevant basis for taking into account reliance on the assumption now that there has been some. I agree it's an assumption. I'll start with congressional ratification, then I'll turn to the agency deference doctrines, if you like. As far as the congressional ratification, I think the short answer is from this court's Donaldson opinion on Bonk in 1994. The fact that the PTO may have failed to adhere to a statutory mandate over an extended period of time does not justify its continuing to do so. This isn't a case where you can assume that Congress adopted this. This is not something that Congress has looked at. There was no testimony before Congress. There's no settled judicial interpretation. We've had two district judges look at this since then, and they've reached different results. This court declined to reach the issue in Encyclopedia Britannica. There's no settled judicial interpretation. There's no longstanding regulation with force of law. Congress never looked at it. Congressmen don't stay up at night reading the MPEP. This is an obscure practice that really they were unaware of. There's no reason to infer ratification. People who are in their offices talking to their staff about drafts of legislation do. Not in the MPEP. This has never come up. Section 120 is a long statute. It has been amended in other respects, but there's been no indication that Congress has ever looked at this particular issue. I think there would be a great overextension of congressional silence. This is not, and I don't think the other side has pointed to anything along these lines. Sometimes you get ratification in the sense that Congress has done something that makes no sense except on the assumption of some previous interpretation. We don't have anything like that. There's no such argument here. If you like, I can turn to that one. Again, we know from beyond the Chevron pale. Basically, the idea of Chevron is you infer that Congress gave the agency the authority to make regulations with force of law, and then you defer when they have done so. We can debate whether this is substantive. Formality is not strictly required for something to be given Chevron deference. Why does Chevron deference or the substantive equivalent of it not apply when you start with terms filing and patenting and say, in this provision or this clause of the provision, there's no specification of granularity at the level of day? Forever, the PTO has in fact been saying what it is defending here. This is a matter of Skidmore deference, not Chevron deference. Chevron applies when you've got something with force of law that Congress has given the agency the authority to regulate with force of law, and the agency has done so. The agency has not regulated with force of law here. I don't think they could, but even assuming they could, they haven't. You're really getting down to Skidmore deference at that point. I will add that the government has argued that you should defer to regulation 1.7 AD, but that has nothing in there about before the patenting. That just repeats co-pendency. What's your response to the suggestion that co-pending in the formal regulation 178 has a clear meaning when you understand that it comes from Godfrey? Again, we have no dispute with Godfrey. Our point is that- And so why does Godfrey not indicate that you get to reach back even when these events occur on the same day, and the language Godfrey used sure suggests that the withdrawal happened before the refiling, before in the less than day-to-day granularity sense. Well, Godfrey didn't have a section 120. The statute was written to adopt a rule around some of the existing practice regarding Godfrey, but what it used was the term before the patenting, and that didn't exist at that time. Godfrey was dealing with a situation of continuing applications when you're basically getting rid of your original application. Today, what the statute refers to is abandonment or termination of proceedings. Today, as then, the abandonment or termination of proceedings did not occur until the PTO acted upon it, and for good reason, because if you made a mistake in your continuing application in the old days, for example, you didn't include claims, you're done. So what was the significance in Godfrey of- Why did the court take the trouble to say the withdrawal and refiling amount to a single continuing thing? What was the legal of- Right, and you got to remember what's going on is that there's one person filing two things at the same time and intended to keep them all as a continuing application. Patenting is different. Patenting is fundamentally different because it's not one person just filing papers. You've got two different entities acting. You've got the applicant that's filing the application, and then you've got the PTO issuing the patent, and that's not an ex parte procedure, by the way. Issuing the patent has real effects on real people out there in the general public. We need to know exactly what the date is. The patenting date is very clear. It's set in section 154, and it's critical to both patentees who want to run into court and sue to stop the issuing pharmaceutical, that somebody's going to launch their pharmaceutical, and they want to get an injunction, or they want damages. If I understand right, the point you're just making in trying to distinguish Godfrey, doesn't it run a little bit counter to your earlier point that almost metaphysically there's an application, and there's a patent, and there's a very clean line between those- And that's not true for applications. You can have co-pending applications. In fact, that's what's required. There's no inconsistency with having two applications overlap. Right, but I guess the concern that I'm, or the question I guess I'm trying to explore, is in Godfrey, one way in which the first application might have gone away and not be co-pending is withdrawal. The other is if it actually ripened into an issue patent, and I'm not sure why the co-pending substantive point made by Godfrey should be different, depending on in which way the application went away. We believe that both are consistent with the co-pendency idea, because the PTO does not terminate proceedings or deem an application to have been abandoned until the PTO looks at it and says proceedings are done. Basically, the application is deemed filed when mailed by current regulation, adopted pursuant to an explicit statute, and the termination of proceedings or abandonment- Are you saying that Godfrey's reasoning depended on the idea that when the court said they withdrew it, that the withdrawal hadn't taken effect yet? No. My point is that Godfrey wasn't dealing with a statute, dealing with the words before the patenting. What Godfrey was saying is there's one continuous process here, and there was always an application pending. There was the original application, and there was what we now call a continuing application. The term didn't exist back then. That made sense the way it's going. Here, we have a different scenario. We have an application going along, and then it becomes a patent. It is binary. The real question comes down to, do you agree with me whether the patenting occurs on a particular day rather than at a particular moment? I submit that it does, because the Patent Act tells you that the term runs from the date of issuance. That's the only way to understand what patenting means. It can't be the date on which the PTO notifies that you're going to get a patent or when it allows a patent. If you get a notice of allowance, you can still go back and not pay your issue fee or try to amend your claims because you've discovered intervening art. There's nothing about the notice of allowance that constitutes patenting, nor does the notification that you get that on such and such a date, on August 6, 2002, you're going to get a patent. That means you're going to get a patent. It's August 6 that you got the patent, and you can enforce that patent all day long. That has to be the rule. There's no other way to read the statute. I understand that if you just read the words before the patenting, it doesn't say before the date of the patenting, but you must construe that in light of the entire statute. The entire statute and historical practice tells you that it's always been determined by the day, not by the hour, the minute, or the moment. There's really no other way to look at it. Now, I think we were, I don't know if you want me to discuss Auer or Skidmore. I think we got to Skidmore. Skidmore is basically the weakest doctrine of deference. It depends on the ability of the rationale of the agency to persuade. In the NPEP itself, it doesn't have any rationale other than to say honor before equals before, and that's contrary to United States versus Locke, which tells you that they're obviously different. We do have an amicus free from the government. It's a post hoc rationalization in the Supreme Court's terms, but you can look at it for its persuasive value. I think it's wrong because, again, it's relying on ambiguities about the dates of patenting and filing. There is no ambiguity about the date of filing. We know it's a filing date. There's no ambiguity about the time of patenting. It is a date. Just to state the obvious, 120 doesn't say the date of filing in the relevant portion of the provision. It doesn't, but it does refer to the date. At heart, I gather your argument is, everywhere else in the Patent Act you look, time is measured in days and not in anything else, so why not here? Yes. It also, in 120 itself, it refers to the application date of the first one. There's no reason to think the application of the second application would be judged in different units than the timing of the first application. In fact, again, the statute expressly refers to application dates. To me, that means you've got to compare apples and apples. Remember, I think what's going on here is, a merchant's trying to have his cake and eat it, too. You either have a patent or you have an application. Once you have your patent in force, they wanted to collect damages for the date of issuance. You can't do that if it's still an application. In the IPO's brief, for example, they were saying, effectively, the PTO has said that before means no later than, and that they've effectively deemed patents to have been issued at the end of the day. Well, that can't be right. The statute says the term runs from the date of issuance. It doesn't run from the next day. The only way to... But if one is thinking in less than day level of time, you don't have to get to the end of the day in order to capture the events of the day, because you can subdivide it infinitely. Call it 1201 and 1202, but make it even finer. In my view, whatever it's done at the date level, and if the patent is in force, it is no longer an application. The implication of that is that to file before the patenting, which occurs at a day level, it needs to be the day before. Again, they're warned of what that date is. They deliberately chose to file... This is a merchant's in-house counsel. They deliberately chose to file on that date and not before that date. They relied at their peril. We haven't seen any evidence that they specifically relied on this MPEP provision, but if they did, they didn't read to the end of the paragraph, because they would have sent in their money earlier. If they did, they should have read the statute first. If you would like, I can address the summary judgment or anything else. I think we're right out of time. Thank you. Thank you. Thank you. The counsel invoked repeatedly US versus LOC. The statute there was very different. The filing had to be made before December 31st, before a date. I guess I do think that the argument on the other side is something quite like what I tried to summarize. Everywhere in the Patent Act that you look, and indeed elsewhere in 120 itself, time is measured in units of days. How could this not be? I think that's a point for us, not against us, Judge Toronto. When Congress wanted to specify something happening before a date, it did so expressly. Here, as Judge Lynn pointed out, it instead provided that something had to happen before the patenting, which is, as you said, a squishy concept, something that there's no particular... It leads right into it. It says, filed on the date of the prior application if filed before the patenting. You're suggesting that because Congress didn't say filed on the date before the patenting, that we should read some affirmative intent to not include the date in there? I read affirmative intent not to foreclose the PTO from observing the longstanding practice of with respect to the administrative occurrence itself. Nowhere does the statute specify what exactly the patenting is or when exactly it happens. There's certainly no legislative history or no evidence that Congress considered this in 1952 or did this affirmatively at all, right? Well, not with respect particularly to the issue that we're talking about, but there's ample legislative history that Congress in 1952 intended to adopt wholesale the pre-1952 continuation application process. This court has said that. The legislative history says it expressly unless there is a change, and there was only one change, as I pointed out before, and it wasn't this. Council talked about Section 154, about the patent term, but again, that is a provision that uses a date. It talks about a patent term beginning on the date on which the patent issues. Can you just address the fact that at least part of 120 refers to the date as well? Right. Part of 120, you get the benefit of the filing date of the earlier application. That's a case where Congress meant to key a timing requirement off of a date, but it didn't do so here and nothing in 154. It does seem to me you're right that in the law, when there is a disparity in language and you're trying to figure, and one of them is the odd man out, and you're trying to figure out what meaning to give it, sometimes you say, oh, let's pay attention to the fact that there's a difference and there must be an intent to make it different. Sometimes one says we're going to treat it the same way as everything surrounding it. What is the evidence, I guess, that the odd man out here was deliberately an odd man out? Or is it just that, I mean, or do you immediately fall into, well, in the absence of a resolution, PTO gets to decide and they have consistently? Right. Judge Toronto, you put your finger on the fact that there could be two forms of the argument. There could be a strong form of the Rousseau argument that HTC's understanding is foreclosed by the statute because it didn't use this date of formulation. I would suggest that the history might support that kind of argument, but I don't think I have to convince you of that. I'm suggesting that the absence of the date of the patenting means that Congress did not foreclose longstanding historical practice. It did not mean to alter it because if it had done that, if it had put in the date of, this would be a very different case, but it didn't do that. It was silent. In the light of that silence, we can assume that Congress intended preexisting practice to be adopted. Of course, the history doesn't end in 1952. It continues. This MPEP rule has been on the books since 1961. Congress has repeatedly amended Section 120. It once reenacted it in its entirety. And under this Court's decision in Cooper Technologies and the Supreme Court's decision in Auburn Regional Medical Center, there's no requirement that there be evidence in the record that Congress cited this provision. It's presumed to know what the PTO publishes about its practice and when it repeatedly amends Section 120 and repeatedly... I think it was Mr. Bagatelle that asked the question and he said, whatever else we have here, we don't have any congressional action whose logical sensibleness depends on accepting the view that you're arguing, right? No, we don't make that particular argument. We just rest on the fact that... Like in 119 and the plant patent. Right. We're not making that kind of argument, but what we're invoking is this Court's precedent saying Section 120 was meant to adopt settled continuation practice going back to Godfrey versus Ames. And I think the reliance interests that we have talked about are profoundly important here. I think there are few cases that present this degree of widespread, profound, very specific reliance on a rule issued by a regulator saying you can protect your intellectual property if you file on this date. And tens of thousands of patentees relied in good faith on that rule. And as Mr. Schultz said, there are ample precedent for the fact that that is another deference doctrine and a reason to defer to the PTO's long settled construction. Thank you. Thank you. We thank all parties and the cases submitted.